# EXHIBIT 1

9/24/2024 10:26 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 92373391
By: Wanda Chambers
Filed: 9/24/2024 10:26 AM

## CAUSE NO._____

| | | |
|---|---|---|
| EVOLVED SOUND CORPORATION, INC. | § | IN THE DISTRICT COURT |
| & RANDY JEFFERSON, D/B/A BIGG TYME | § | |
| | § | |
| v. | § | |
| | § | |
| SWISHA-BLAST ENTERTAINMENT, LLC, | § | _____JUDICIAL DISTRICT |
| WARNER BROS DISTRIBUTING, INC., | § | |
| BROADCAST MUSIC, INC., D/B/A BMI, | § | |
| RAP-A-LOT 2K RECORDS, INC., | § | |
| MICHAEL JONES, D/B/A MIKE JONES, AND | § | |
| HOUSTON NFL HOLDINGS, LP, D/B/A | § | |
| HOUSTON TEXANS | § | HARRIS COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **EVOLVED SOUND CORPORATION, INC. & RANDY JEFFERSON, D/B/A BIGG TYME**, hereinafter referred to as "Plaintiffs", complaining of DEFENDANTS SWISHA-BLAST ENTERTAINMENT, L.L.C., WARNER BROS DISTRIBUTING, INC., BROADCAST MUSIC INC., D/B/A BMI, RAP-A-LOT RECORDS, INC., MICHAEL JONES, D/B/A MIKE JONES, AND HOUSTON NFL HOLDINGS, L.P., D/B/A HOUSTON TEXANS, hereinafter collectively referred to as "Defendants" and for its cause of action would respectfully show this Honorable Court the following:

### I.

### DISCOVERY LEVEL

1. Plaintiffs intend to conduct discovery under Level 2 of TEX. R. CIV. P. 190.3.

2. Plaintiffs seeks monetary relief in excessive of $1,000,000 dollars and non-monetary relief.

.

## II.

## PARTIES

3.      Plaintiff Evolved Sound Corporation is a Texas Corporation headquartered in Harris County, Texas.

4.      Plaintiff, Randy Jefferson, d/b/a Bigg Tyme, is an individual who resides in Harris County, Texas.

5.      Defendant, Swisha-Blast Entertainment LLC, is a Texas Limited Liability Corporation, headquartered in Harris County, Texas at 40 Cypress Creek Parkway, Suite 193, Houston, Texas, 77090. This Defendant may be served with process through its registered agent, Henry Guidry, Jr., 40 Cypress Creek Parkway, Suite 193, Houston, Texas, 77090.

6.      Defendant, Warner Bros Distributing, Inc., is a California Corporation headquartered at 4000 Warner Blvd, Burbank, CA, 91522. This Defendant may be served through its registered agent CT Corporation Systems, 1999 Bryan St, Suite 900, Dallas, TX, 75201-3136.

7.      Defendant, Broadcast Music, Inc., d/b/a BMI, is a Tennessee Corporation located at 10 Music Square East, Nashville, TN, 73203. This Defendant may be served through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.

8.      Defendant, Rap-A-Lot 2K Records, Inc., is a Texas Corporation headquartered in Harris County, Texas. This Defendant may be served through its registered agent James A. Prince, 2141 W. Governors Circle, Houston, Texas 77092.

9.      Defendant Michael Jones, d/b/a Mike Jones, is a resident of the State of Texas and Dallas County.  He may be served at his residence 1800 Main Street, Dallas, Texas, 75201.

10.      Defendant Houston NFL Holdings, L.P., d/b/a Houston Texans (sometimes referred to as "The Texans") is a Delaware limited partnership, doing business under the trade

name Houston Texans in the State of Texas with its principal place of business in Harris County

Texas.  Houston NFL Holdings, L.P. may be served with process through its registered agent,

Capitol Corporate Services, Inc. 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

## III.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this court in that the amount in controversy exceeds the

minimum jurisdictional limits of the court.

12.     Pursuant to Tex. Civ. Prac. & Rem. Code § 15.001 et. seq., venue is proper in

Harris County as all or a substantial part of the events or omissions leading to this cause of action

occurred in Harris County and, a majority of the corporate and individual defendants are domiciled

in Harris County.

## IV.

## FACTS

*"There would be no Still Tippin today without BiggTyme's Still Tippin."*
*- Anthony "G-Dash" Guidry of SwishaBlast[1]*

13.     This case revolves around the original authors and owners of the Unofficial

Houston anthem, known as "Still Tippin". The parties to this case are music writers, labels,

distributors, and composers.

14.      In early 2002, Randy Jefferson, also known as Bigg Tyme and owner of Evolved

Sound Corporation, produced the beat, some vocals, and lyrics for the Original Still Tippin.  He

hired and contracted with the artists Chamillionaire, Slim Thug and Mike Jones to perform the

vocals for the song. He did this work in collaboration with Swisha-Blast Entertainment, LLC.

---

[1] October 12, 2022, Interview with Donnie Houston.

15.     Plaintiff Evolved Sound Corporation and the predecessor in interest to Defendant Swisha-Blast Entertainment, LLC (known as Swisha Blast, L.L.C) signed a contract related to all things Still Tippin' prior to work beginning on the Song and Album in 2002. ***See Exhibit A and A-1 to Plaintiff's Original Petition.***

16.     In the contract, Evolved Sound and Swisha-Blast, agreed globally to "the recording, production, manufacture, and distribution of certain master recordings (the "Masters") to be embodied on the album presently entitled "The Day Hell Broke Loose - Part 2" (the "Album")."

17.     Moreover, the contract calls for Evolved and Swisha-Blast to jointly own "all right, title and interest, including the copyright, in the Masters, the Album and the Packaging".

18.     During the recording process and in keeping with the contractual terms, Mr. Jefferson and Evolved secured the vocal talent of non-defendant artist Chamillionaire, Defendant-Artist Mike Jones and Artist Slim Thug, who were paid-for-hire vocalists on the Still Tippin song. After completion of the song, Still Tippin was copyrighted under Registration Number PA0001267054, listing Randy Jefferson as the Author of the words and music for the song.

19.     After the Masters for all songs, including Still Tippin' were completed, Swisha-Blast, Michael Watts, and Anthony Guidry, a/k/a G Dash, negotiated with Warner Bros about distributing an Unauthorized Copy of Still Tippin.  This Unauthorized Copy used identical lyrics, song name, and hook but replaced the artist Chamillionaire for Paul Wall and added Salih Williams as an additional producer.  The Unauthorized Copy is substantially similar to the original.

20.     Ultimately, Swisha-Blast, Anthony Guidry and Michael Watts agreed to terms with Warner Bros and BMI (or their predecessors in interest) about the use and distribution of

4

their catalog of music.  Included in the catalog were the masters of Still Tippin' as recorded, produced and owned by Mr. Jefferson.

21.     Mr. Jefferson was never consulted about the terms of this arrangement nor paid as the registered author and/or owner of the Song.  Evolved Sound, and its representative, Mr. Jefferson, also never approved the terms of the arrangement as required by the contract, nor were they compensated as 50% owner of the copyright in question.

22.     To this day, Defendants continue to state publicly that Paul Wall, Slim Thug, Mike Jones and Salih Williams, created the song Still Tippin.

23.     It has recently come to Plaintiffs' attention that Defendants have given access to and allowance for the Houston Texas Football team to use/perform/and promote the Still Tippin song, without Plaintiffs' knowledge and/or permission.

24.     Due to the failure to consider and/or acknowledge Plaintiffs Jefferson and Evolved Sound's involvement, and ownership in the Original, Defendants should be cited and brought before this Court.  Plaintiffs Jefferson and Evolved Sound seek in this lawsuit their compensation and rightfully owed to Mr. Jefferson and Evolved Sound as both the author of the song and an owner of the song.

**V.**

**CAUSE OF ACTION NO. 1: BREACH OF CONTRACT**

24.     Plaintiffs Evolved Sound and Jefferson incorporates all preceding paragraphs in this matter.

25.     Plaintiffs Evolved Sound and Jefferson and Defendants Swisha-Blast had an agreement related to the creation, production, and distribution of Still Tippin.

26.     The key contractual provision for this case is as follows:

5

"Any and all licenses and agreements with respect to the distribution and/or other exploitation of the Masters and/or the Album including, but not limited to, distribution agreements (collectively, "Third Party Licenses"), and all terms contained therein (including financial terms), shall be subject to the mutual approval of Evolved and Swisha. Evolved and Swisha hereby mutually approve Southwest Records and Tapes as a distributor for the *Album*. **For the avoidance of doubt, neither party hereto shall enter into any Third Party License without the prior written consent of the other party**…".

27.    Defendants Swisha-Blast have failed to fulfill any of their contractual obligations under the terms of the Contract making the basis of this claim. As a result, Plaintiffs Evolved Sound and Jefferson have suffered actual, economic and non-economic damages.

## CAUSE OF ACTION NO. 2: TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL AND/OR BUSINESS INTERESTS

28.    Plaintiffs Evolved Sound and Jefferson incorporates all preceding paragraphs in this cause of action.

29.    Over the years since Still Tippin was recorded, each of the Defendants have steadfastly refused to acknowledge Plaintiffs' role in the song. The conduct of each Defendant against Evolved Sound and Jefferson has caused Plaintiffs to lose prospective contracts and opportunities. Moreover, their conduct has blocked Plaintiffs' ability to profit and/or be compensated from this his work on Still Tippin.

30.    Defendants' actions and conduct have unnecessarily caused earned royalties to be diverted and withheld from Plaintiffs. Defendants Texans have entered into a contractional relationship with the other Defendants to use Still Tippin improperly. Plaintiffs have and will continue to suffer actual damages as a result of Defendants' actions and conduct.

## CAUSE OF ACTION NO. 3: DEFAMATION

31.     Plaintiffs incorporate by reference the preceding fact sections.

32.     Defendants have repeatedly and falsely claimed to be the sole creators and originators of the Song "Still Tippin". Defendants Texans have promoted the other Defendants as the creators and purveyors of the "Unofficial Houston Anthem – Still Tippin'."

33.     Defendants' repeated defamatory statements have damaged Plaintiffs' reputation and business.  Plaintiffs' reputation for commercially viable music has been tarnished and effected his earning capacity immensely. Plaintiffs' have suffered damages as a direct result of Defendants' defamatory statement of fact and are entitled to recovery.

## CAUSE OF ACTION NO. 4: THEFT OF TRADE SECRETS

34.     Plaintiffs rely on and incorporate by reference all preceding paragraphs into this cause of action.

35.     Defendants were aware of Plaintiff's trade secret, specifically the compilation of musical notes, stanza, themes, etc.

36.     Plaintiffs took the legally recognizable action to protect those trade secrets, by copyrighting the Original "Still Tippin".

37.     All Defendants, including the Houston Texans, have committed theft of trade secrets by using Plaintiffs' song in violation of a contractual relationship with Plaintiff. Moreover, Defendants committed theft of trade secrets by acquiring and using Plaintiffs' trade secrets.

38.     Plaintiffs have suffered actual and consequential injuries and damages as a result of Defendants' theft.

## CAUSE OF ACTION NO. 5: CONVERSION

39.     Plaintiffs rely on and incorporate by reference all preceding paragraphs into this cause of action.

40.     Defendants were aware that Plaintiffs owned a one-half copyright interest in the Original "Still Tippin". Plaintiffs' ownership interest is shown in the registered copyright for the Original "Still Tippin".

41.     By their actions, Defendants have wrongfully executed control over the rights and use of the Original "Still Tippin". Moreover, Defendants have stolen the identity and reputation of Plaintiffs as the creator of a commercially successful composition. Instead, Defendants have claimed the song "Still Tippin" to be their own.

42.     Plaintiffs have suffered injury and damages as a result of Defendants' conversion of Plaintiffs' property and identity.

## CAUSE OF ACTION NO. 6: DECLARATORY JUDGMENT ACTION

43.     Given the preceding paragraphs, Plaintiffs seeks a Declaratory Judgment in this instant case that Plaintiff Jefferson is an author and owner of Still Tippin and owner of 50% of all right, title and interest to the Original "Still Tippin". Plaintiff Randy Jefferson is registered as the author of the words and music for the Original 'Still Tippin". Plaintiffs seek a declaration that Plaintiffs Evolved Sound and Jefferson are owed royalties on a past and continuing basis for the song Still Tippin. Defendants are estopped from impeding or in any way withholding from Plaintiffs any previously owed royalties and continuing royalites due and owing on the Original Still Tippin.

44.     A declaratory judgment is proper when there is a discernable dispute between the parties and their applicable rights and remedies. *See Bonham State Bank v. Beadle*, 907 S.W. 2d

465, 467 (Tex. 1995). The controversy need not be completely ripe, but rather litigation is imminent and unavoidable. *See Unauthorized Practice of Law Cmte. V. Nationwide Mut. Ins.*, 155 S.W. 3d 590, 595 (Tex.App. – San Antonio 2004, pet. Denied.).

45. In this case, Defendants have made plainly clear that they have no intention to acknowledge Plaintiffs place in the evolution of "Still Tippin". Defendants collectively and individually intend to disrupt any effort to properly compensate Plaintiffs for their work on "Still Tippin". Pursuant to Texas Civil Practices and Remedies Code § 37.004(a), Plaintiffs Evolved Sound and Jefferson are entitled to declaratory judgment.

## CAUSE OF ACTION NO. 7: ACCOUNTING

46. Plaintiffs demand an accounting by Defendants of all amounts received as a result of the exploitation of the Works, including, without limitation, sales of sound recordings, licensing of performance rights, and licensing of masters containing the Works, and that defendants pay plaintiff his share of all profits realized. The exact nature and extent of the sales, expenses, and inventory are unknown to plaintiff and cannot be determined without an accounting of the transactions of the parties], and an investigation of the accounts between the parties is necessary since there is no adequate remedy at law and in order to establish the value of the interests of the parties.

## CAUSE OF ACTION NO. 8: COPYRIGHT INFRINGEMENT

47. Plaintiffs rely on and incorporate by reference all preceding paragraphs into this cause of action.

48. Plaintiffs are the owners of certain intellectual property rights in the song "Still Tippin" including, but not limited to the copyright registration referenced above.

49. Defendants have used the artistic expression protected by said registration for their own commercial uses without the permission of Plaintiff(s).

9

50.     Plaintiffs demand disgorgement of any profits and/or revenue from said unauthorized use in the past, present, and/or future.

## VI.

## DAMAGES

51.     Plaintiffs have suffered actual and punitive damages in an amount in excess of the jurisdictional limits of this court.  Plaintiffs are entitled to the following measures of damages:

a.  Actual damages in an amount in excess of the jurisdictional limits of this court for unpaid royalties, theft of trade secret, identity theft, and/or damage to Plaintiffs' business reputation.

b.  Punitive damages to punish the defendants for their actions.

c.  Pre-Judgement interest as to Defendant Swisha Blast based on contractual dealings.

## VII.

## PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER

52.     Based on the representations, actions, and conduct by Defendants, both orally and written, Plaintiffs now requests a temporary restraining order to stop Defendants SWISHA-BLAST ENTERTAINMENT, L.L.C., WARNER BROS DISTRIBUTING, INC., BROADCAST MUSIC INC., D/B/A BMI, RAP-A-LOT RECORDS, INC., MICHAEL JONES, D/B/A MIKE JONES, AND HOUSTON NFL HOLDINGS, L.P., D/B/A HOUSTON TEXANS, from using and profiting from the use of the Still Tippin song. Plaintiffs incorporate the foregoing paragraphs for this application, as well.

53.     Upon information and belief, Plaintiffs Evolved Sound and Jefferson understand that Defendants intend to promote, perform and allow further use of Still Tippin at all Houston Texans home games.  Moreover, Still Tippin is appearing on Houston Texans Apple Music

10

Playlist and possibly other streaming services playlists.  This use of the song is without any regard to Plaintiffs' rightful interest in the song and in contravention of a valid registered copyright.

54.     Plaintiffs Evolved Sound and Jefferson have a probable right of recovery upon trial on the merits.  Without a restraining order, Defendants are likely to continue to disburse funds that rightfully belong to Plaintiffs.  Defendants are also likely to continue using and promoting the song without properly compensating Plaintiffs.

55.     Plaintiffs Evolved Sound and Jefferson seek a temporary restraining order from this Court as follows:

a.   Defendants should be enjoined from performing, promoting and/or using "Still Tippin" in any forum or media.

b.   Defendants should be enjoined from making or allowing any representations as to the author/owner/producer/creator of the song "Still Tippin".

c.   Defendants, and their agents, assigns, and contractors should be enjoined from removing and/or destroying any social and electronic media referring to "Still Tippin" or the album "The Day All Hell Broke Loose Part 2".

d.   Defendants should be enjoined from allowing and/or entering into contract for the use of "Still Tippin" by any entity and or persons.

11

e. Defendants should be enjoined from disbursing any funds and/or royalties related to the use, performance, and any other allowance for "Still Tippin" to any party prior to resolution of this matter.

f. Defendants should be enjoined from promoting any tour and/or merchandise using the name "Still Tippin".

g. Defendants should present to this Court within three (3) days of the signing of this order financial records proving the amount of monies received related to "Still Tippin".

h. Defendants SWISHA-BLAST ENTERTAINMENT, L.L.C., WARNER BROS DISTRIBUTING, INC., BROADCAST MUSIC INC., D/B/A BMI, RAP-A-LOT RECORDS, INC., MICHAEL JONES, D/B/A MIKE JONES, AND HOUSTON NFL HOLDINGS, L.P., D/B/A HOUSTON TEXANS, should be required to place any royalties and payments related to the use of Still Tippin and due as of the date of this order into the registry of the Court, including any funds received from the Houston Texans Organization.

56. Plaintiffs Evolved Sound and Jefferson, d/b/a Bigg Tyme do not have an adequate remedy at law, given that Defendants have withheld Plaintiffs' rights and monies for a significant period of time. Without the above protections, Defendants will continue to use Still Tippin without proper acknowledgement of and compensation to Plaintiffs.

57.    Without court-imposed restraint, Defendants could cause additional damage to the Plaintiffs' rights and reputation.  To allow this conduct to continue would cause irreparable harm. Plaintiffs Evolved Sound and Jefferson requests a hearing on this Application for Temporary Restraining Order, as soon as practicable before the Ancillary Court.  Should the Court grant a temporary restraining order, Plaintiffs Evolved Sound and Jefferson are prepared to post a bond.

## VIII.

## PLAINTIFF'S REQUEST FOR TEMPORARY INJUNCTION

58.    Plaintiffs Evolved Sound and Jefferson in conjunction with the request for temporary restraining order, also seek a temporary injunction to be in effect until the completion of the trial on the merits.  Plaintiffs Evolved Sound and Jefferson request a hearing on the request for temporary injunction.

## VII.

## JURY DEMAND

59.    Plaintiffs Evolved Sound and Jefferson demand a jury trial and tenders the appropriate fee with this petition.

## VIII.

## ATTORNEYS' FEES

60.    As this is a suit for declaratory relief and breach of contract, Plaintiffs Evolved Sound and Jefferson is entitled to recover reasonable and necessary attorneys' fees. See Tex. Civ. Prac. & Rem. Code §37.009.

13

## VIX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs EVOLVED SOUND CORPORATION

AND RANDY JEFFERSON d/b/a BIGG TYME pray that the Defendants be cited to appear and

answer herein; that upon legal trial or hearing of this cause, that judgment be rendered as prayed

for as against Defendants; that the judgment bear interest as allowed by law for pre-judgment and

post-judgment interest; that costs of court and attorney fees and expenses be taxed against the

Defendants; and for such other and further relief, at law and in equity, to which Plaintiffs may

show itself justly entitled.

Respectfully submitted,


BY:____/s/ Rob P. Todd_____

ROB P. TODD
State Bar No: 20098900
202 Travis, Suite 208
Houston, Texas 77002
(832) 778-0306
rtodd@hcgllp.com


and


By: /s/ Kevin A. Murray_____

KEVIN A. MURRAY
State Bar. No. 24007720
BrookHollow III
2950 North Loop West, Suite 500
Houston, Texas 77092
Tel. (713) 355-5500
Fax. (888) 331-5747
kmurray@murrlaw.com

**ATTORNEYS FOR PLAINTIFFS EVOLVED
SOUND CORPORATION AND
RANDY JEFFERSON, d/b/a BIGG TYME**

14

EXHIBIT

A

CAUSE NO. _____

| | | |
|---|---|---|
| EVOLVED SOUND CORPORATION, INC. | § | IN THE DISTRICT COURT |
| & RANDY JEFFERSON, D/B/A BIGG TYME | § | |
| | § | |
| v. | § | |
| | § | |
| SWISHA-BLAST ENTERTAINMENT, LLC, | § | _____ JUDICIAL DISTRICT |
| WARNER BROS DISTRIBUTING, INC., | § | |
| BROADCAST MUSIC, INC., D/B/A BMI, | § | |
| RAP-A-LOT 2K RECORDS, INC., | § | |
| MICHAEL JONES, D/B/A MIKE JONES, AND | § | |
| HOUSTON NFL HOLDINGS, LP, D/B/A | § | |
| HOUSTON TEXANS | § | HARRIS COUNTY, TEXAS |

## AFFIDAVIT OF RANDY JEFFERSON, D/B/A BIGG TYME

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Randy Jefferson known to me to be the person whose name is subscribed herein below, and, after being first duly sworn upon his Oath did state:

"My name is Randy Jefferson. I am the president of Evolved Sound Corporation, Inc. and also the individual Plaintiff of the same name in the above action. I am over the age of eighteen years (18) and have personal knowledge of the statements made herein and in the foregoing Original Petition and I am fully competent and authorized to testify to the matters therein and herein stated.

1. "I have personal knowledge of the claims raised in the foregoing petition. I have read the foregoing petition and the factual allegations raised therein are true and correct.

2. "I am the President of Evolved Sound Corporation, Inc. and have full authority from said entity to testify to the matters herein.

3.    "In early 2002, I (through my trade name Bigg Tyme and as owner of Evolved Sound Corporation) produced the beat, some vocals, and lyrics for the song "Still Tippin" pursuant to a written contract with Swisha Blast Entertainment, LLC and pursuant to which I hired and contracted with the artists Chamillionaire, Slim Thug and Mike Jones to perform the vocals for the song.

4.    "Evolved Sound Corporation and the predecessor in interest to Defendant Swisha-Blast Entertainment, LLC (known as Swisha Blast, L.L.C) signed a contract related to all things Still Tippin' prior to work beginning on the Song and Album in 2002. *See Exhibit A-1 to Plaintiffs' Original Petition.*

5.    "In the contract, Evolved Sound and Swisha-Blast, agreed globally to "the recording, production, manufacture, and distribution of certain master recordings (the "Masters") to be embodied on the album presently entitled "The Day Hell Broke Loose - Part 2" (the "Album")."

6.    "The contract calls for Evolved and Swisha-Blast to jointly own "all right, title and interest, including the copyright, in the Masters, the Album and the Packaging".

7.    "During the recording process and in keeping with the contractual terms, I and Evolved secured the vocal talent of non-defendant artist Chamillionaire, Defendant-Artist Mike Jones and Artist Slim Thug, who were paid-for-hire vocalists on the Still Tippin song. After completion of the song, Still Tippin was copyrighted under Registration Number PA0001267054, listing me as the Author of the words and music for the song.

8.    "After the masters for all songs, including Still Tippin' were completed, Swisha-Blast, Michael Watts, and Anthony Guidry, a/k/a G Dash, negotiated with Warner Bros about distributing a second version of Still Tippin. The second version used identical lyrics, song name, and hook but replaced the artist Chamillionaire for Paul Wall and added Salih Williams as an additional producer. The second version is substantially similar to the original.

9.    "Swisha-Blast, Anthony Guidry and Michael Watts agreed to terms with Warner Bros and BMI (or their predecessors in interest) about the use and distribution of their catalog of music.  Included in the catalog were the masters of Still Tippin' as recorded, produced and owned by me and/or Evolved.

10.    "I was never consulted about the terms of this arrangement nor paid as the registered author and/or owner of the Song.  Neither Evolved Sound nor me personally, also never approved the terms of the arrangement as required by the contract, nor were we compensated as 50% owner of the copyright in question.

11.    "My reputation in the hip-hop community has been damaged and continues to be damaged by Defendants continued use of the song Still Tippin.  Without acknowledging my role in the creation of the song, I have lost all credibility for my ability to make a commercial successful song."

12.    "I am the custodian of records for myself and for Evolved Sound Corporation. Attached hereto as Exhibit A-1 are 7 pages of records from Plaintiffs which are contract.  These 7 pages are kept by me in the regular course of business, and it is the regular course of business for the Plaintiffs for an employee or representative of Plaintiffs with knowledge of the act, event, condition, opinion or diagnosis recorded to make the records or transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.  The records attached hereto are originals or exact duplicates of the original.

"Further affiant saith not."

Randy Jefferson

Sworn to and subscribed before me, the undersigned authority, on the 20th day of September, 2024.

NOTARY PUBLIC

FELICIA MARIA PARKER
Notary Public, State of Texas
Comm. Expires 04-21-2026
Notary ID 132720205

9/24/2024 10:26:59 AM
Marilyn Burgess   District Clerk
Harris County
Envelope No: 92373391
By: CHAMBERS, WANDA R
Filed: 9/24/2024 10:26:59 AM

EXHIBIT

As of March 1, 2002

Swisher Blast, Inc. *L.C.C. MW*
5170 Aldine Mail Route, Suite 200
Houston, TX 77039
Attn: Michael Watts

      Re:   <u>Evolved Sound Corporation/Swisha Blast, Inc. *L.C.C. MW* - Agreement</u>

Dear Michael:

      This letter sets forth the material terms of the agreement (the "Agreement") between Evolved Sound Corporation ("Evolved")12638 Ashford Chase Dr, Houston, TX 77082 and Swisha Blast, Inc. ("Swisha"), 5170 Aldine Mail Route, Suite 200, Houston, TX 77039 in connection with the recording, production, manufacture and distribution of certain master recordings (the "Masters") to be embodied on the album presently entitled "The Day Hell Broke Loose - Part 2" (the "Album"). Evolved and Swisha hereby agree to the following terms and conditions:

      1.  <u>Evolved Obligations.</u>

      (a) Evolved shall record and produce the Masters and shall engage all artists, producers, musicians and other personal required to record and produce the Masters (individually and collectively, "Talent") All Talent shall be subject to the mutual approval of Evolved and Swisha. All costs incurred in connection with the recording and production of the Masters including, but not limited to, any fees payable to any Talent (collectively, the "Recording Budget") shall be deemed to be "Expenses" (as defined in Paragraph 4(a) below). The Recording Budget shall be subject to the mutual approval of Evolved and Swisha. For the purposes hereof, any agreement with any Talent shall be referred to as a "Talent Agreement".

      (b) With respect to any musical composition ("Composition(s)") embodied in any Master which is written, owned or controlled by any Talent, Evolved shall either cause the applicable Talent to (i) assign all right, title and interest, including the copyright, in the Composition, to Evolved ("Controlled Composition"); or (ii) grant a mechanical license for use of the applicable Composition for use in the Master(s) and Album and in advertisements and promotions of the Master(s) and the Album, provided that the financial terms of any such mechanical license shall be subject to the mutual approval of Evolved and Swisha. The terms of this Paragraph 1(b) shall not apply to any Talent ("Swisha Talent") which is currently a party to an exclusive recording agreement with Swisha pursuant to which Swisha is entitled to own all or a portion of the copyright in the musical compositions written or controlled by such Swisha Talent ("Swisha Controlled Composition(s)").

      (c) With respect to any Controlled Composition (other than any Controlled

JVEvolvedSwisha03262002

1

Composition written by Randy Jefferson ["Jefferson Controlled Interest"] and Swisha Controlled Compositions), Evolved shall own fifty percent of that portion of the copyright acquired from the Talent ("Evolved Controlled Interest") and Evolved shall assign to Swisha fifty percent (50%) of that portion of the copyright acquired from the Talent ("Swisha Controlled Interest"). Evolved shall have the right to administer the Evolved Controlled Interest and collect all publishing revenue payable with respect to the Evolved Controlled Interest as well as the applicable songwriter's share of income ("Songwriter Income") payable with respect to each Controlled Composition. Evolved shall be responsible for accounting and paying the applicable Songwriter Income. Swisha shall have the right to administer the Swisha Controlled Interest and shall collect all revenue payable with respect to the Swisha Controlled Interest (which shall be exclusive of the Songwriter Income with respect to each Controlled Composition). Notwithstanding the foregoing, Swisha shall have the right to collect all mechanical royalties, including the songwriter share thereof, with respect to Swisha Controlled Compositions and shall be solely responsible for accounting and paying any portion thereof payable to the Swisha Talent.

(d) In connection with any Evolved Controlled Interest, Swisha Controlled Composition, any Jefferson Controlled Interest and any Swisha Controlled Interest, Evolved and Swisha hereby grant a mechanical license for use of the each party's Controlled Interest in Controlled Compositions (including Swisha Controlled Compositions) on the applicable Masters and the Album. In connection therewith, Evolved and Swisha shall receive their respective share of mechanical royalties equal to seventy-five percent (75%) of the statutory mechanical royalty rate in effect in the U.S. and Canada on the date of the initial commercial release of the Album, provided that such mechanical royalties shall be payable solely with respect to phonorecords sold and not returned. Mechanical royalties shall be payable to Evolved and Swisha on a monthly basis no later than fifteen (15) days following the last day of each month.

(e) To the extent that Evolved is aware of any sample or interpolation (collectively, "Sample") embodied in any Composition or Master, Evolved shall use its best efforts to clear the use of such Sample, provided that (i) any fees required to be paid in connection with such clearance shall be subject to the mutual approval of Evolved and Swisha; and (ii) any costs incurred in connection with the clearance of any Sample shall be deemed to be an Expense for the purposes of this Agreement. Prior to the retail street date for the Album, Evolved shall provide Swisha with (i) a list of all Samples of which it is aware; (ii) the status of Evolved's efforts to clear the use of such Samples; and (iii) copies of any licensing agreements with respect to such Samples. In the event, that Evolved has been unable to clear the use of a particular Sample, such Sample shall either be removed from the applicable Composition or Master; or the Master containing such Sample shall be removed from the Album as Evolved and Swisha shall mutually determine. In no event, shall Evolved be liable to Swisha as a result of any damages, claims or demands arising out of the use of any Sample on any Composition or Master.

JVEvolvedSwisha03262062                    2

2. <u>Swisha Obligations</u>.

(a) Evolved and Swisha hereby agree that (i) the name "Swisha House" and any other logo associated with Swisha (individually and collectively, the "Swisha Trademark(s)") shall be used on the packaging of the Album, Singles (as defined in Paragraph 2(b) below and the Masters and in any and all advertisements and promotions thereof; and (ii) the name "Evolved Sound Corporation" and any other logo associated with Evolved (individually and collectively, the "Evolved Trademark(s)") shall be used on the packaging of the Album, Singles and the Masters and in any and all advertisements and promotions thereof. Swisha hereby warrants and represents that it owns, or has the right to use, the Swisha Trademarks and that use of the Swisha Trademarks will not violate or infringe upon the rights of any other person or entity. Evolved hereby warrants and represents that it owns, or has the right to use, the Evolved Trademarks and that use of the Evolved Trademarks will not violate or infringe upon the rights of any other person or entity. Evolved and Swisha hereby agree that the Evolved Trademarks and the Swisha Trademarks shall be in the same type and size and in the same location on all such materials referenced in this Paragraph 2(a).

(b) Swisha shall prepare the artwork and packaging for the Album and any singles ("Singles") derived therefrom (collectively, "Packaging"), provided that (i) Evolved and Swisha shall have the right to mutually approve all elements of the Packaging; (ii) the budget for the Packaging shall be subject to the prior approval of Evolved and Swisha; and (iii) any costs incurred in connection with the Packaging shall be deemed to be Expenses for the purposes of this Agreement.

(c) Swisha shall cause the Album and any Singles derived therefrom to be mastered, if necessary, and Swisha shall cause the Album and any Singles to be manufactured in accordance with customary industry standards, provided that (a) Evolved and Swisha shall have the right to mutually approve the manufacturing entity and any manufacturing costs; and (ii) any manufacturing costs shall be deemed to be Expenses.

(d) Swisha and Evolved shall be jointly responsible for advertising, promoting and marketing the Album and any Singles in accordance with a budget mutually determined by Evolved and Swisha. Without limitation of the foregoing, representatives of Evolved and Swisha shall remain reasonably available to render marketing and promotional services in connection with the Album and any Singles derived therefrom for a period of no less than six (6) months following the retail street date for the Album.

3. <u>Ownership of Masters/Packaging</u>.

(a) Evolved and Swisha shall jointly own all right, title and interest, including the copyright, in the Masters, the Album and the Packaging. In connection therewith, each party hereto agrees to execute any document reasonably required by the other party to confirm such party's interest therein including, but not limited to, assignments of copyright in the Masters, the

JVEvolvedSwisha03262002                    3

Album and the Packaging.  Evolved and Swisha hereby expressly agree that neither party shall have the right to sell or assign its ownership interest in the Masters, the Album and/or the Packaging without the prior written consent of the other party.

(b) Any and all licenses and agreements with respect to the distribution and/or other exploitation of the Masters and/or the Album including, but not limited to, distribution agreements (collectively, "Third Party Licenses"), and all terms contained therein (including financial terms), shall be subject to the mutual approval of Evolved and Swisha.  Evolved and Swisha hereby mutually approve Southwest Records and Tapes as a distributor for the Album. For the avoidance of doubt, neither party hereto shall enter into any Third Party License without the prior written consent of the other party except as expressly set forth in Paragraph 8(c) below.

(c) Evolved and Swisha agree that all Talent Agreements and all Third Party Licenses shall be executed by an authorized representative of Evolved and an authorized representative of Swisha. *Evolved and Swisha shall both be parties to any such agreement.*

4. Expenses.

(a)  All unrelated third party out-of-pocket expenses ("Expenses") incurred in connection with the recording, producing, mixing, mastering, manufacturing, distributing, promoting, advertising and marketing of the Masters and the Album shall be borne fifty percent (50%) by Evolved and fifty percent (50%) by Swisha.  No Expenses shall be incurred without the mutual consent of both parties.

(b) To the extent that Expenses have not been previously advanced by either party hereto, such Expenses shall first be deducted from "Available Revenue" as defined and set forth in Paragraphs 5(a) and 5(c)(iii) below.  Neither party shall be reimbursed for its share of Expenses, provided that if at the time that Available Revenue is to be distributed, one party has contributed Expenses in excess of the other party's contribution ("Excess Expense Contribution"), the contributing party shall first be reimbursed for its Excess Expense Contribution prior to any other distribution of Available Revenue to either party.  By way of example only, if one party has contributed Expenses in the amount of $7,500 and the other party has contributed Expenses in the amount of $5,000, such party shall be entitled to receive $2,500 of Available Revenue prior to any other distribution of Available Revenue to the parties.

5. Allocation of Revenue.

(a)  All revenue derived from the exploitation of the Masters and/or the Album including, but not limited to any advances, ("Available Revenue") after the deduction of any third party distribution fees and/or any other sums retained by any unrelated third party in accordance with any Third Party Licenses shall be deposited into a joint bank account.  All disbursements from such bank account shall require the joint signature of a representative of Evolved and a representative of Swisha.

(b)   Available Revenue shall be allocated (i) in accordance with the applicable terms of any unrelated third party agreement which requires the payment of Expenses in accordance with the approved budgets therefor; and (ii) otherwise as Evolved and Swisha mutually determine.

(c) Available Revenue shall be allocated in the following manner:

(i) Available Revenue shall first be applied to the payment of any outstanding Expenses which have not been previously paid by either Evolved or Swisha;

(ii) Available Revenue shall then be applied to the payment of mechanical royalties for any and all Compositions embodied in any Master including, but not limited to, Controlled Compositions;

(iii) An amount equal to twenty-five percent (25%) of remaining Available Revenue shall be held as a reserve for returns and/or the payment of additional Expenses.  To the extent that any reserve is not exhausted within six (6) months after such reserve is initial held, such reserve shall be distributed in accordance with Paragraph 5(c)(v) below

(iv) Any remaining Available Revenue shall then be applied to the payment of any Excess Expense Contribution; and

(v) Any remaining Available Revenue shall be allocated fifty percent (50%) to Evolved and fifty percent (50%) to Swisha.

6.   Warranties/Representations/Indemnity.

(a) Each party hereby represents and warrants that: (i) it is authorized and empowered to enter into this Agreement and is authorized to grant all of the rights granted and assume all of the obligations assumed herein without the consent or approval of any other person or entity; (ii) it is not under any disability, restriction or prohibition with respect to the rights granted hereunder and the performance of such party's obligations hereunder;

(b) Each party hereto ("Indemnitor") agrees to and does hereby indemnify, save and hold the other party and its licensees, and the owners, directors, officers, employees and agents of each of the foregoing (individually and collectively "Indemnitee(s)"), harmless of and from any and all damages, liabilities, costs and expenses (including legal expenses and reasonable attorneys' fees) arising out of or connected with any breach of this Agreement, or any claim arising out of a breach of any of Indemnitor's  warranties or representations hereunder, provided such claim has resulted in a final, non-appealable judgment or has been settled with Indemnitor's consent which shall not be unreasonably withheld.  Indemnitee shall provide Indemnitor with notice of any claim to which the foregoing indemnity applies, and Indemnitor may participate in the defense of any such claim through counsel of Indemnitor's selection at

Indemnitor's own expense.

    7. <u>Notices</u>. All notices shall be in writing and shall be sent to Evolved and Company at the addresses for such parties set forth above, or such other addresses as such parties shall specify in writing, and shall be sent by personal delivery, certified mail, return receipt requested or overnight courier if such services actually provide proof of delivery, and the day of mailing (or personal delivery) shall be deemed to be the date of giving of such notice. A courtesy copy of all notices to Evolved shall be sent to Edward Z. Fair, Esq., 3532 Bee Caves Rd., Suite 115, Austin, TX 78746. A courtesy copy of all notices to Swisha shall be sent to the Guess Firm, P.L.L.C., Attn: Carol Y. Guess, Esq., 2626 S. Loop West, Suite 545, Houston, TX 77054.

    8. <u>Miscellaneous</u>.

       (a) This Agreement sets forth the entire understanding of the parties hereto with respect to the subject matter hereof. No modification of this Agreement shall be binding unless confirmed by a written instrument signed by the party to be bound by such modification. A waiver by either party of any provision of this Agreement in any instance shall not be deemed to waive such provision for the future.

       (b) Neither party hereto shall be deemed to be in breach of such party's obligations hereunder unless such party fails to remedy such breach within thirty (30) days after receipt of written notice from the other party specifying the details of such breach.

       (c) Neither party shall have the right to assign any of such party's rights or obligations hereunder without the other party's prior written consent except (i) to an entity owned or controlled by such party; (ii) as a result of an acquisition of substantially all of such parties assets by an entity substantially involved in the production and/or distribution of records or an entity substantially involved in the music publishing business (collectively, "Music Business Entity"); or (ii) to a Music Business Entity into which such party is merged.

       (d) Nothing contained in this Agreement shall be deemed or construed to constitute or create between the parties hereto a partnership, joint venture, or agency

       (e) This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas applicable to contracts made and to be wholly performed therein. In connection therewith, Evolved and Swisha hereby consent to the exclusive jurisdiction of the state and federal courts located within the State of Texas in connection with any dispute arising out of any party's rights or obligations pursuant to this Agreement. In the event of litigation arising out of this Agreement or the relationship of the parties created thereby, the prevailing party shall be entitled to recover any and all reasonable attorneys' fees and other court costs incurred in connection therewith.

       (f) The parties contemplate entering into a more formal agreement containing the above terms and conditions as well as other terms and conditions customarily contained in

JVEvolvedSwisha03262002          6

agreements of this nature negotiated in good faith. Unless and until such more formal agreement is executed, this Agreement, when executed on behalf of Evolved and Swisha, shall constitute a binding agreement between them.

If the foregoing correctly sets forth the understanding of Evolved and Swisha, please sign all copies where indicated below.

Sincerely,

Evolved Sound Corporation

Authorized Officer

AGREED AND ACCEPTED:

Swisha Blast, Inc. LLC

Authorized Officer

9/24/2024 10:26:59 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 92373391
By: CHAMBERS, WANDA R
Filed: 9/24/2024 10:26:59 AM

CAUSE NO._____

| | | |
|---|---|---|
| EVOLVED SOUND CORPORATION, INC. | § | IN THE DISTRICT COURT |
| & RANDY JEFFERSON, D/B/A BIGG TYME | § | |
| | § | |
| v. | § | |
| | § | |
| SWISHA-BLAST ENTERTAINMENT, LLC, | § | _____JUDICIAL DISTRICT |
| WARNER BROS DISTRIBUTING, INC., | § | |
| BROADCAST MUSIC, INC., D/B/A BMI, | § | |
| RAP-A-LOT 2K RECORDS, INC., | § | |
| MICHAEL JONES, D/B/A MIKE JONES, AND | § | |
| HOUSTON NFL HOLDINGS, LP, D/B/A | § | |
| HOUSTON TEXANS | § | HARRIS COUNTY, TEXAS |

## ORDER GRANTING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

After reviewing Plaintiffs' Application for Temporary Restraining Order, the pleadings, the affidavits, and arguments of counsel, the Court finds there is evidence that harm is imminent to Plaintiffs, and if the Court does not issue the temporary restraining order, Plaintiffs will be irreparably injured because the Defendants will unlawfully interfere with Plaintiffs' contractual rights and copyright protections.

Furthermore, the continued breach of the applicable contract and willful and tortious interference with contracts and copyrighted protections will result in further irreparable damage to Plaintiffs' business reputation.

Plaintiffs are likely to succeed on the merits of its lawsuit because Defendants are liable for the breach of the agreement and tortious interference with the listing agreement. No adequate remedy at law exists in this matter. If Defendants are not restrained in the aforementioned manner, the damages are incalculable.

Therefore, by this order, the Court does the following:

    a.  Defendants should be enjoined from performing, promoting and/or using "Still Tippin" in any forum or media.

    b.  Defendants should be enjoined from making or allowing any representations as to the author/owner/producer/creator of the song "Still Tippin".

    c.  Defendants, and their agents, assigns, and contractors should be enjoined from removing and/or destroying any social and electronic media referring to "Still Tippin" or the album "The Day All Hell Broke Loose Part 2".

    d.  Defendants should be enjoined from allowing and/or entering into contract for the use of "Still Tippin" by any entity and or persons.

    e.  Defendants should be enjoined from disbursing any funds and/or royalties related to the use, performance, and any other allowance for "Still Tippin" to any party prior to resolution of this matter.

    f.  Defendants should be enjoined from promoting any tour and/or merchandise using the name "Still Tippin".

g.  Defendants should present to this Court within three (3) days of the signing of this order financial records proving the amount of monies received related to "Still Tippin".

h.  Defendants SWISHA-BLAST ENTERTAINMENT, L.L.C., WARNER BROS DISTRIBUTING, INC., BROADCAST MUSIC INC., D/B/A DMI, RAP-A-LOT RECORDS, INC., MICHAEL JONES, D/B/A MIKE JONES, AND HOUSTON NFL HOLDINGS, L.P., D/B/A HOUSTON TEXANS, should be required to place any royalties and payments related to the use of Still Tippin and due as of the date of this order into the registry of the Court, including any funds received from the Houston Texans Organization.

This Court orders the Clerk of Court to issue notice to Defendants that the hearing on Plaintiffs' application for temporary injunction is set for _____ at _____ a.m. /p.m. The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

This order expires on _____, 2024 at _____ a.m./p.m.

This order shall not be effective unless and until Plaintiffs executes and files with the clerk a bond in conformity with the law in the amount of $ _____.

_____
PRESIDING JUDGE

3